# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL JOSEPH DAVIS, SR, ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | CIVIL ACTION NO. 11-10276-NG |
| ) | |
| MIDDLESEX SUPERIOR COURT, ET AL., ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

GERTNER, D.J.

### BACKGROUND

On January 31, 2011, Plaintiff, Michael Joseph Davis ("Davis"), a prisoner now in custody at the Billerica House of Correction, and a frequent filer in this Court, filed a two-page handwritten document entitled "Complaint" written in narrative form as a letter.[1]

The Complaint is not organized in any meaningful fashion; however, as with a number of other lawsuits filed in this Court, Davis complains of his conditions of confinement. He names the Billerica House of Correction as a Defendant, and claims that he is in fear for his safety because of retaliation by the medical staff because he has requested proper medical treatment. Specifically, he claims that his sugar levels have been above 350 without any insulin for his diabetes, nor has he been prescribed diet meals, and his requests for such treatment have been denied.

In addition to asserting civil rights claims, Davis also seeks habeas corpus relief with respect to his conviction and/or sentence in October 2008 for Assault and Battery. He names the

---

[1]The letter came in an envelope with a return address for Gerald Pitman, Inmate No. 117836 at the Billerica House of Correction.

Middlesex Superior Court as a Defendant, and claims he has been held 28 months, which is over the guideline range of 6-24 months.

Finally, in his Complaint, Davis seeks this Court institute "emergency proceedings" against Michael A. Sullivan, Esq., the Clerk of the Middlesex Superior Court in Woburn, Massachusetts. Davis contends that he is "frustrated" with that court because he has had to go to trial with two different 12-man jurors because of unfair proceedings against him. He seeks a preliminary injunction to enjoin the Commonwealth of Massachusetts from "continuing the practice of unfair Prison Condition to confine me...." Compl. at 2.

Davis did not pay the $350.00 filing fee for this action, nor did he file an application for a waiver thereof, along with his certified prison account statement.

Subsequently, on February 9, 2011, Davis filed a pleading entitled "Amended Complaint Habeas Corpus For Injunctive Relief." In that pleading, Davis names the Woburn Superior Court and the Middlesex Superior Court, and seeks redress from alleged unconstitutional acts by two Superior Court judges in connection with an unspecified criminal prosecution. He claims, *inter alia*, that he was denied due process in that: (1) he was denied his true probation record or CORI record; (2) he was not allowed a fair review of his sentencing guidelines; (3) he was unable to correct his criminal record during his criminal proceedings; and (4) his criminal docket was false. He seeks equitable relief under 28 U.S.C. § 1983. Davis further claims that he <u>is</u>, in fact, complaining of matters that would necessarily implicate the validity of his state criminal sentencing and criminal conviction.

Additionally, Davis asserts that he has been transferred from prison facility to prison facility as retaliation because he is exercising his rights as a *pro se* litigant. Further, he claims

the state court acted with deliberate indifference to him, causing him bodily injury, pain, and mental anguish (as a result of his incarceration). He seeks a writ of habeas corpus in order to return home to his family, as well as an injunction restraining the state court from sentencing him "from three months on and after...." Am. Compl. at 9, ¶ a. He also seeks an order for the first state judge (unidentified) to render her sentence before the second state judge, in order to ensure a fair

sentencing. Further, he seeks an order enjoining the state court from retaliating against him for exercising his First Amendment right to redress his sentence, and an order providing him emergency relief in the form of information regarding his probation records and CORI records. Finally, he seeks costs and attorney's fees.

DISCUSSION

I.  Declination to Construe This Action as a Habeas Petition

As a threshold matter, Davis has filed a civil non-habeas Complaint and an Amended Complaint that incorporates both a request for relief concerning his conditions of confinement (including a request for non-habeas injunctive relief under § 1983), and a request for habeas relief challenging his impending state court sentences and/or imposed sentences (the precise status of his state criminal proceedings is not clear).

Generally, a party only may challenge his custody through a habeas petition and may not also seek non-habeas relief with respect to conditions of confinement. See Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973) (prisoner challenging the very fact or duration of his physical imprisonment and seeking determination that he is entitled to immediate release or speedier release from such imprisonment must proceed under habeas laws); Allen v. McCurry, 449 U.S.

3

90, 104 (1980) ("[T]he purpose of [the writ of habeas corpus] is not to redress civil injury, but to release the applicant from unlawful physical confinement).

Here, Davis has filed two distinct claims in one action. The Court considers the crux of Davis's claims in his original Complaint to be his claims concerning the lack of medical treatment for his diabetes, and denial of his request for special meals. This is virtually identical to claims raised in his prior litigation against other prison facilities claiming, *inter alia*, inadequate medical care for his diabetes. See Davis v. Bristol County Sheriff's Department, et al., C.A. 10-11250-JLT; Davis v. Middlesex Sheriff's Office, et al., C.A. 09-11209-EFH; and Davis v. Essex County Correctional Facility, et al., C.A. 09-12189-JLT. In the Amended Complaint, Davis focuses primarily on his due process claims with respect to deficiencies in his criminal prosecutions, and seeks relief from the criminal sentences already imposed or to be imposed.

In light of the above, and because Davis has not provided sufficient information for this Court to find that he has presented cognizable habeas claims, this Court will <u>not</u> construe this action as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a state court sentence. Further, it is uncertain whether Davis has exhausted his state remedies with respect to his challenges to his continued confinement based on his Assault and Battery conviction in 2008 or any other state criminal matter. Davis must first exhaust his state remedies in order to proceed under § 2254. In any event, should Davis seek to assert a habeas claim, he may file a separate habeas action, by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

In order for this Court to have all the relevant information necessary to consider a habeas claim, the Clerk shall send to Davis a standard § 2254 form for completion by Davis. Further, Davis is advised that should he file a habeas petition, he must also pay the $5.00 filing fee or seek a waiver of that fee in accordance with 28 U.S.C. § 1915.[2]

Accordingly, the Court declines to construe this action as a habeas petition, and, to the extent that Davis seeks immediate habeas relief, his request is <u>DENIED</u> without prejudice.

II.     The Filing Fee For Civil Actions

As noted above, the Court will construe this action <u>only</u> as presenting non-habeas civil rights claims. As such, in order to proceed with this civil action, Davis must either (1) pay the $350.00 filing fee, <u>see</u> 28 U.S.C. § 1914(a); or (2) seek leave to proceed without prepayment of the filing fee, <u>see</u> 28 U.S.C. § 1915 (proceedings *in forma pauperis*). Where, as here, Davis is a prisoner, a motion for waiver of prepayment of the filing fee must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2).[3]

---

[2] A party filing a habeas action in this Court must either (1) pay the $5.00 filing fee for habeas corpus actions; or (2) seek leave to proceed without prepayment of the filing fee. <u>See</u> 28 U.S.C. § 1914(a) (fees); 28 U.S.C. § 1915 (proceedings *in forma pauperis*). The motion for leave to proceed without prepayment of the filing fee must be accompanied by "a certificate from the warden or other appropriate officer of the place of confinement showing the amount of money or securities that the petitioner has in any account in the institution." Rule 3(a)(2) of the Rules Governing Section 2254 cases.

[3] Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. Based on the information contained in the prison account statement, the Court will direct the appropriate

Davis is, no doubt, aware of the filing fee requirements of this Court, as he has been informed by this Court of the filing fee requirements numerous times. See, e.g., Davis v. Bristol County Sheriff's Department, et al., C.A. 10-11250-JLT (Memorandum and Order (Docket No. 4)); Davis v. Essex County Correctional Facility, C.A. 09-12189-JLT (Memorandum and Order (Docket No. 5)); Davis v. Middlesex Sheriff's Department, C.A. 09-11453-DPW (Procedural Order (Docket No. 5)); Davis v. Newton District Court, et al., C.A. 09-11210-RGS (Order (Docket No. 5)); Davis v. Middlesex Sheriff's Office, C.A. 09-11209-EFH (Order (Docket No. 5)).

Accordingly, this action will not be permitted to proceed unless Davis satisfies the filing fee requirements noted above, within 21 days from the date of this Memorandum and Order.

Additionally, should Davis seek leave to proceed *in forma pauperis*, he must show good cause why this Court should not deem him to be a three-strikes litigant (and therefore ineligible for *in forma pauperis* status), under 28 U.S.C. § 1915(g), for the reasons discussed below.

III.   Davis is a Three Strikes Litigant Under 28 U.S.C. § 1915(g)

Under the three-strikes rule of § 1915(g), a prisoner may be denied *in forma pauperis* status if he has had, on three or more prior occasions, an action or appeal dismissed on the ground that it was frivolous, malicious, or failed to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). Where a prisoner has "three strikes," he may only proceed *in forma pauperis* if he is "under imminent danger of serious physical injury." Id.

---

prison official to withdraw an initial partial payment from the plaintiff's account, followed by payments on a monthly basis until the entire $350.00 filing fee is paid in full. See 28 U.S.C. § 1915(b)(1)-(2). Even if the action is dismissed upon a preliminary screening, see 28 U.S.C. §§ 1915(e)(2), 1915A, the plaintiff remains obligated to pay the fee, see McGore v. Wrigglesworth, 114 F.3d 601, 607 (6th Cir. 1997) (§ 1915(b)(1) compels the payment of the fee at the moment the complaint is filed).

Here, a review of Davis's substantial litigation history in this Court reveals that he has had at least three "strikes" within the meaning of § 1915(g), and, although he claims inadequate medical care, there is no claim that this action involves the threat of <u>imminent</u> danger of physical injury to him.[4]

In order to invoke the exception of the three-strikes rule based on the allegation of imminent danger of serious bodily harm, two elements must be met: the harm must be <u>imminent</u> and the claim for relief asserted must be for the <u>alleviation</u> of that threat of harm.  See, e.g., <u>Judd v. Federal Election Com'n</u>, 311 Fed. Appx 730 (5th Cir. 2009) (rejecting prisoner's *in forma pauperis* application noting that the alleged threats were not related to his complaint); <u>Polanco v. Hopkins</u>, 510 F.3d 152, 155 (2d Cir. 2007) (finding no error by the district court in determining prisoner's allegations (relating to health risks associated with his exposure to mold or as to his claim of unjust discipline) did not support a determination that he was in imminent danger under 1915(g)); <u>Martin v. Crosby</u>, 219 Fed. Appx. 599 (8th Cir. 2007) (unpublished disposition;

---

[4]The strikes against Davis include the following cases: (1) <u>Davis v. Essex County Correctional Facility, et al.</u>, C.A. 09-12189-JLT (Order of Dismissal (Docket No. 7) entered on April 26, 2010 based upon the Memorandum and Order (Docket No. 6) and the Memorandum and Order to demonstrate good cause why the action should not be dismissed (Docket No. 5); (2) <u>Davis v. Middlesex Sheriff's Department</u>, C.A. 09-11453-DPW (Order of Dismissal (Docket No. 12) entered on July 22, 2010 after failure of Davis to comply with the directives to show cause why the action should not be dismissed based on the legal impediments outlined in the Memorandum and Order (Docket No. 7 and Memorandum and Order (Docket No. 11)); (3) <u>Davis v. Newton District Court</u>, C.A. 09-11210-RGS (Order of Dismissal (Docket No. 13) entered on September 1, 2009 based upon the Memorandum and Order (Docket No. 12) dismissing the action pursuant to 28 U.S.C. § 1915A and failure to satisfy the filing fee requirements); and (4) <u>Davis v. Middlesex Sheriff's Office</u>, C.A. 09-11209-EFH (Order of Dismissal (Docket No. 14) entered on April 15, 2010 based upon the Memorandum and Order (Docket No. 13) dismissing the action for failure to comply with the directives to show cause why the action should not be dismissed on the merits, as discussed in the Memorandum and Order (Docket No. 11).

allegation by prisoner of risk of sexual assaults and unwarranted strip searches were baseless, and district court was alerted by the appellate court to require prisoner to demonstrate that he "is truly in imminent danger" before being allowed to proceed *in forma pauperis*); <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 313-315 (3d Cir. 2001) (holding prisoner may invoke the imminent danger exception to 1915(g) only to seek relief from a danger which is imminent at the time the complaint is filed; stating "Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms"); <u>Watley v. Collins</u>, 2006 WL 3422996, *5 (S.D. Ohio 2006) (danger claims concerning past events cannot support a claim of imminent physical danger; the imminent danger must relate to the claims in order to meet the exception of § 1915(g), citing <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 312 (3d Cir. 2001) (statutory interpretation of § 1915(g) requires that imminent danger is assessed at time the complaint is filed)).

Neither Davis's Complaint nor Amended Complaint sets forth in any meaningful fashion allegations sufficient to demonstrate that he is in imminent danger of physical harm. Although he makes a bald allegation of retaliation by medical staff and by the Court, he fails to provide any underlying factual support for the assertion, or any underlying factual support for a claim that the threat of harm is imminent. His bald assertions of pain and suffering while imprisoned are insufficient to demonstrate imminent danger. Indeed, Davis has been making the same claims for at least the past two years with respect to his medical care. Thus, without more, this Court cannot find that Davis has satisfied this Court that he is exempted under the three-strikes rule of § 1915(g) based on the imminent danger exception.

Accordingly, as noted above, within 21 days of the date of this Memorandum and Order, Davis must pay the $350.00 filing fee in its entirety if he seeks to pursue any civil rights claims under 42 U.S.C. § 1983, or, if seeking leave to proceed *in forma pauperis*, he must also show

good cause why this Court should not deem him to be a three-strikes litigant (and therefore ineligible for *in forma pauperis* status), under 28 U.S.C. § 1915(g).

IV.  Request for Emergency Relief; Abstention; and The Favorable Termination Rule, and Sovereign Immunity as Bar to Claims

For the reasons set forth above, the Court <u>DENIES</u> all requests for emergency relief either with respect to his conditions of confinement, with respect to his continued detention, or with respect to his impending state sentences. Additionally, to the extent that Davis seeks an Order of this Court intervening in some fashion in the state court criminal proceedings against him (based on the claims against Clerk Michael A. Sullivan), the request is <u>DENIED</u>.

First, Davis provides no good cause for *ex parte* injunctive relief under Rule 65 of the Federal Rules of Civil Procedure. His allegations are amorphous and wholly conclusory in nature, without any underlying factual support. Second, he has not satisfied the filing fee requirements for proceeding in this Court, and thus any request for emergency relief is premature. Third and perhaps most importantly, this Court lacks jurisdiction to interfere with ongoing criminal prosecutions by the state.

Principles of abstention require this Court to decline exercising jurisdiction over the claims that would result in this Court's intervention in the ongoing state proceedings. In <u>Younger v. Harris</u>, 401 U.S. 37 (1971), the Supreme Court reiterated "the fundamental policy against federal interference with state criminal prosecutions." <u>Id.</u> at 46. This doctrine of abstention "is based on principles of comity, and unless there are extraordinary circumstances, it instructs federal courts not to 'interfere with ongoing state-court litigation.'" <u>Rossi v. Gemma</u>, 489 F.3d 26, 34 (1st Cir. 2007) (quoting <u>Maymó-Meléndez v. Álvarez-Ramírez</u>, 364 F.3d 27, 31 (1st Cir. 2004)). <u>Younger</u> abstention extends to civil cases where the requested relief would (1) interfere with ongoing state judicial proceedings; (2) that implicate an important state interest; and (3) that provide an adequate opportunity for the federal plaintiff to advance his federal claim.

9

Id. at 34-35. Similarly, to the extent that Davis is seeking federal review of any final decision of a state court, this Court lacks subject matter jurisdiction to conduct such review, pursuant to the Rooker-Feldman doctrine. The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. See Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994); Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc., 544 U.S. 280 (2005) (doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit).

Here, it is clear that this Court cannot dismiss the state criminal charges against Davis, nor does this Court have mandamus power to order a state court judge to dismiss those criminal charges, to sentence him to any particular sentence, or to direct that one state court judge impose sentence before another judge. See Burnett v. Superior Court of Marin County, 573 F. Supp. 345 (N.D. Cal.1983) (district court lacks jurisdiction to compel state court to perform its alleged duty). Moreover, this Court lacks the power to direct the state court judge to act in any particular fashion with respect to disclosure of probation or CORI records.[5]

---

[5]Section 1361 of title 28 provides that:

> [t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. The Defendants are not federal officers, employees or agencies and therefore they are not subject to the statutory mandamus authority of this Court. Moreover, a petition for mandamus must be denied where a petitioner has other avenues of relief, as here. Georges v. Quinn, 853 F.2d 994, 995 (1st cir. 1998) (*per curiam*).

Finally, the Court notes that to the extent that Davis's claims are construed as presenting a civil rights action against Clerk Sullivan under 42 U.S.C. § 1983 or against any state court judge for violation of his due process rights in connection with his criminal proceedings, such claims appear to be barred by the favorable termination rule since Davis is a sentenced prisoner. It is well settled that a civil rights claim under 42 U.S.C. § 1983 that relates to a criminal prosecution and/or to the unlawfulness of confinement, does not accrue unless the prisoner has obtained a "favorable termination" of the underlying conviction, parole, disciplinary action or condition of confinement. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Under the so-called "Favorable Termination Rule" of Heck:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, <u>or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid</u>, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. (emphasis added; footnote omitted). Without such a showing of a favorable termination, a prisoner's cause of action under § 1983 has not yet accrued. Id. at 489. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) -- no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) -- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). In other words, under Heck and its progeny, a claim under § 1983 that would necessarily imply the invalidity of the states' deprivation, punishment or duration of confinement may not be brought unless and until the condition is reversed. If success under a § 1983 claim would either directly or indirectly result in speedier release, which properly lies at "the core of habeas corpus," it cannot be brought under 42 U.S.C. § 1983. Id. at 82 (citing Preiser, 411 U.S. at 489.

11

In light of this, and in view of the discussion noted above with respect to habeas proceedings under 28 U.S.C. § 2254, Davis's claim against Clerk Sullivan or any state court judge or state court is not cognizable, and therefore no emergency relief against him is warranted.[6] As an additional ground for denial of emergency relief, Davis's claims against the Middlesex Superior Court (the named Defendant) are barred by the doctrine of sovereign immunity. The Courts of the Commonwealth of Massachusetts (as instrumentalities of the State), are not subject to suit in this Court, under the doctrine of sovereign immunity grounded in the Eleventh Amendment.[7] See Alabama v. Pugh, 438 U.S. 781, 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Pugh) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought."); cf. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of §1983); Quern v. Jordan, 440 U.S. 332, 344 (1979)

---

[6]As noted above, Davis's Amended Complaint indicates that he is challenging matters that would directly impact on his criminal cases. In light of this, any claims raised in the Amended Complaint may be subject to the Heck favorable termination rule or under the principles espoused in Wallace v. Kato, 549 U.S. 384 (2007) (discussing doctrine with respect to pretrial detainees and holding that if a plaintiff files a claim related to rulings that *will likely be made* in a pending or anticipated criminal trial, a district court may stay the civil action until the criminal case (or likelihood of criminal case) has ended)).

[7]The Eleventh Amendment to the United States Constitution provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

(Congress did not override state's Eleventh Amendment immunity in enacting §1983); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (there has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity).

V.      Preliminary Screening of the Complaint; Failure to State Plausible Claims

Notwithstanding the outstanding filing fee issue, this Court has authority to preliminarily screen this action pursuant to 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[8] In light of the medical claims raised by Davis, the Court finds that preliminary screening under § 1915A is appropriate at this juncture in order to ensure no delay in the event that the filing fee issues are resolved.

Both the Complaint and the Amended Complaint fail to comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) requires a plaintiff to include in a complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense.'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). See Redondo-Borges v. U.S. Dept. of Housing and Urban

---

[8]Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

13

Dev., 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004). Here, in the original Complaint, Davis does not set forth his medical care claims separately as to each Defendant; rather, he collectively asserts his claims against "medical staff" rather than identify any person or persons allegedly liable for his inadequate medical care. Similarly, in the Amended Complaint, Davis asserts a host of due process violations and legal conclusions, without sufficient underlying factual information as to the state court proceedings.

As an additional matter, both the Complaint and the Amended Complaint fail to set forth plausible claims upon which relief may be granted with respect to each of the Defendants. The only named Defendants in the Complaint are the Middlesex Superior Court and the Billerica House of Correction. In the Amended Complaint, the Defendants are listed as the Woburn Superior Court and the Middlesex Superior Court. First, Davis's claims against the Middlesex and Woburn Superior Courts are not plausible because, as noted above, the state courts of the Commonwealth of Massachusetts (as its instrumentalities) are entitled to sovereign immunity under the Eleventh Amendment. Pugh, 438 U.S. at 781.[9]

---

[9]Moreover, to the extent that Davis seeks to assert claims directly against the state court judges, such claims are not cognizable because they are barred by the doctrine of absolute judicial immunity. absolute judicial immunity protects judges from acts performed within the scope of their jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").

14

Next, Davis's civil rights claims against the Billerica House of Correction (or the state courts for that matter) are not plausible because *respondeat superior* is not a viable theory of liability under 42 U.S.C. § 1983 (the vehicle for asserting constitutional violations by state actors). "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "[In civil rights actions],'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials). Here, Davis appears to be asserting the Billerica House of Corrections is vicariously liable for the actions of its medical staff; however, this is insufficient to state a claim upon which relief may be granted.

Further, as discussed above, Davis's claims are subject to dismissal based on principals of Younger Abstention or the Rooker-Feldman Doctrine, as well as the favorable termination rule of Heck.

VI. Order to Show Cause or File Second Amended Complaint

Accordingly, in light of the above, it is hereby Ordered that, in addition to the directives concerning the filing fee and the application of the three-strikes rule under 28 U.S.C. § 1915(g),

Davis shall also submit, within 21 days of the date of this Memorandum and Order, a Second Amended Complaint curing the legal impediments noted herein, or he shall demonstrate good cause why his original Complaint and Amended Complaint should not be dismissed. Davis is advised that he will only be afforded one opportunity to file a Second Amended Complaint curing the pleading deficiencies, and failure to comply with each and every directive of this Court will result in a dismissal of this action.[10]

VII.    Declination to Appoint *Pro Bono* Counsel

The Court notes that in his past litigation, Davis sought the appointment of *pro bono* counsel. In one instance, *pro bono* counsel was appointed for Davis for the purpose of filing an Amended Complaint on his behalf. See Davis v. Bristol County Sheriff's Department, et al., C.A. 10-11250-JLT. It appears from letters filed in this Court that Davis was dissatisfied with *pro bono* counsel.

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, a civil plaintiff lacks a constitutional right to free counsel. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness

---

[10]The Court also notes that, while Davis asserts he made requests for medical treatment, it is unclear whether he has, in fact, properly exhausted his administrative remedies through the grievance process at the Billerica House of Correction. Section 1997e of Title 42 provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 87 (2006) (holding that exhaustion under § 1997e(a) requires "proper exhaustion," meaning that a prisoner must comply with the prison's deadlines and other procedural rules). The failure to exhaust administrative remedies, however, is an affirmative defense, and therefore this Court need not address this issue at this time.

16

impinging on the party's due process rights. Id. To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself. Id. at 24. Based on the dubious merits of Davis's claims for the reasons set forth above, and the apparent failure to exhaust administrative remedies, this Court finds that no exceptional circumstances exist that would justify the appointment of counsel and the expenditure of the scarce *pro bono* resources of the Court as this time.

Accordingly, this Court <u>DECLINES</u> to appoint *pro bono* counsel for Davis. Should Davis seek to pursue this litigation, he must continue to proceed *pro se*.

## <u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

1. The Court declines to construe this action as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254; this case is construed as a non-habeas civil action;

2. The Clerk shall sent Plaintiff a standard § 2254 form for completion should Plaintiff wish to file such an action. Any petition for writ of habeas corpus must be accompanied by the $5.00 filing fee or an application to proceed *in forma pauperis* accompanied by a certified prison account statement;

3. Within 21 days of the date of this Memorandum and Order, Plaintiff shall pay the $350.00 filing fee for this civil action, or he must demonstrate good cause why this Court should not deem him to be ineligible for *in forma pauperis* status as a three-strikes litigant under 28 U.S.C.§ 1915(g), failing which, this action may be dismissed;

4. All of Plaintiff's request for emergency relief are <u>DENIED</u>, including his request for habeas relief, and his request with respect to his conditions of confinement, as well as his requests for an Order intervening in his state court case(s);

5. Within 21 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause why this action should not be dismissed for the reasons stated herein, or file a

Second Amended Complaint curing the pleading deficiencies; failing which, this action shall be dismissed; and

6. The Court <u>DECLINES</u> to appoint *pro bono* counsel for Plaintiff.

SO ORDERED.

<u>/s/ Nancy Gertner</u>
UNITED STATES DISTRICT JUDGE

DATED: March 10, 2011